\*NOT FOR PUBLICATION\*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOCAL 308, NATIONAL POSTAL MAIL HANDLERS UNION, | Civil Action No.: 13-6581(FLW) |
| Plaintiff, | **OPINION** |
| v. | |
| UNITED STATES POSTAL SERVICE, | |
| Defendant. | |

**WOLFSON, District Judge:**

Presently before the Court is the United States Postal Service's ("USPS" or "Defendant") Motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Local 308 of the National Postal Mail Handlers Union's ("Local 308" or "Plaintiff") Complaint, which seeks to vacate an arbitration award. For the reasons set forth below Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED**.

BACKGROUND

**I. The Agreements**

Local 308 is an affiliate of the National Postal Mail Handlers Union that represents mail handlers at the Trenton, NJ USPS processing facility ("Trenton facility") and other surrounding areas. Compl. ¶¶ 1, 4. Similarly, the American Postal Workers Union ("APWU") represents mail clerks at the Trenton facility. *Id.* ¶ 7.  Both unions have separate, bilateral collective bargaining agreements ("CBA") with the USPS. *Id.* ¶¶ 6-7. Relevant to this case is Article 15 of Local 308's CBA, which delineates an arbitration procedure for any grievance pertaining to any "dispute,

difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment." Agreement Between National Postal Mail Handlers Union and USPS pp. 35-49.

In addition to their respective bilateral CBAs, Local 308 and APWU are parties to a tripartite agreement with the USPS, entitled Regional Instruction 399 ("RI-399"). Compl. ¶ 9. This agreement governs "jurisdictional disputes," defined as disputes pertaining to work assignments, "i.e. which craft (Mail Handler or Clerk) would cover what particular work assignments." *Id.* The agreement establishes Dispute Resolution Procedures that begin at the local level and allows for appeals to regional and national level committees. *See* RI-399 Training on Dispute Resolution Process. Included in the RI-399 is an inventory of work assignments at each facility that were not in dispute at the time the RI-399 was executed. Compl. ¶ 10.

The parties also agreed to a number of questions and answers ("Q&As") that clarified the Dispute Resolution Procedures. *See* RI-399 Training on Dispute Resolution Procedures [hereinafter RI-399 Training] at 15. Two Q&As related to this action address situations in which a party files a grievance under its CBA. *Id.* Question Two states that if there is a national case pending, any related local or regional disputes should be stayed until the national issue is resolved. *Id.* Question Three states that if the parties dispute the existence of a jurisdictional issue "[i]t must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim." *Id.* at 15-16.[1]

---

[1] The full text of Q&As Two and Three reads as follows:

> 2. If these issues are pending in cases presently before the RDRC or the LDRC, what, if any, action should be taken by those committees?
> Answer: The RDRC and/or the LDRC should identify the facilities in which disputes over these issues exist and place those disputes on hold pending the outcome of the national discussion.

2

**II. The Present Grievance**

In dispute are work assignments on the Automated Flat Sorting Machine 100 ("AFSM-100"), a machine utilized at the Trenton facility for sorting mail. Compl. ¶¶ 18-19. At the time the RI-399 was signed, assignments on the AFSM-100 were included in the Trenton facility's inventory of undisputed work assignments. *Id.* ¶ 11. In 2003, the APWU filed a grievance challenging work assignments on the ASFM-100 pursuant to its CBA, which was resolved with a bilateral agreement. *Id.* ¶ 13. The APWU sought to enforce the settlement in District Court and the District Court enforced that settlement. *Id.* However, the Third Circuit reversed judgment, finding that any resolution pertaining to jurisdictional issues at the Trenton facility had to include Local 308 in a tripartite agreement. *Trenton Metro Area Local of the American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 636 F.3d 45 (3d Cir. 2011).

On July 13, 2011, Local 308 filed a grievance pursuant to Article 15 of its CBA alleging that the USPS improperly placed the AFSM-100 into contingency mode, which decreases the number of workers. Compl. ¶ 20. Previously in 2006, USPS had made several enhancements to the AFSM-100 and provided documentation pertaining to the operation of the AFSM-100 including instructions on work assignments for each craft. *Id.* ¶¶ 14-17. The Operator Training

---

3. If a grievance exists or is filed alleging a violation of the contract other than RI-399 (e.g. Article 7.2) and one of the parties believes the issue in the grievance constitutes a jurisdictional dispute, what if anything should be done with the grievance?
> Answer: It must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim. If it is determined it involves a jurisdictional claim, the grievance will be processed in the Dispute Resolution Procedures. If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, that question is appealable through the Dispute Resolution Procedures up to and including arbitration for resolution prior to the parties addressing the merits of the dispute. The three parties shall review cases at the lowest possible level which raise the potential of containing a jurisdictional dispute so that the proper procedure is utilized to resolve disputes/grievances.

Manual states the AFSM-100 should only be placed in contingency mode in emergencies and other situations. *Id.* ¶¶ 16-17. Local 308's grievance alleges that USPS put the AFSM-100 into contingency mode in order to "manipulate staffing and overtime." *Id.* ¶ 18. On August 10, 2011, APWU referred the grievance to the Dispute Resolution Procedure. *Id.* ¶ 21. Local 308, APWU, and USPS thereafter resolved certain issues in the grievance trilaterally, but Local 308 continued to pursue the merits of the grievance through Article 15 arbitration. *Id.* ¶ 22-24.

On March 6, 2013, an arbitration hearing was held before Arbitrator Stephen D. Owens ("Arbitrator Owens"). *Id.* ¶ 25. At this hearing, Local 308 and the USPS disputed whether the grievance was jurisdictional, i.e. concerned work assignments of the different mail crafts, and if it should be governed by the RI-399 Dispute Resolution Procedure. *Id.* ¶ 26. Local 308 maintained that the grievance should be resolved in arbitration pursuant to Article 15 of their CBA, whereas the USPS asserted that the grievance involved a jurisdictional dispute, i.e. disputes about the work assignments of different postal crafts, that must be resolved pursuant to the RI-399. Arbitration Award pp. 5-6.

At arbitration, William Lewis ("Lewis"), the President of the Trenton affiliate of the APWU, *see* Arbitration Award pp. 4-5, testified, *inter alia*, that there were then two cases pending at the National Dispute Resolution Committee that pertained to work assignments on the AFSM-100. *See Id.* The first was in response to the decision in *American Postal Workers Union*, where the Third Circuit held that any award as to assignments on the AFSM has to be tripartite and include both the APWU and Local 308. *Id.* The second pending case was an appeal by the APWU of the jurisdictional issue that was purportedly resolved by the 2011 trilateral agreement. *Id.* Lewis stated that the APWU had "the right to appeal the matter [in accordance with] the RI-

4

399 dispute resolution procedure." *Id.* There was also testimony by Nick Campellone, NJ State Executive Board Representative regarding the merits of the Plaintiff's grievance. *Id.*

Relying on testimony and documentation regarding the parties' agreements, Arbitrator Owens issued a thorough arbitration decision that determined the current grievance could not be decided on the merits until the national issues were resolved. Arbitration Award p. 9. He, therefore, stayed the arbitration hearing until that decision was made, retaining future jurisdiction over the grievance. *Id.* Arbitrator Owens specifically determined that:

> The grievance is not arbitrable under Article 15 of the National Agreement until a decision is made of the issue pending at the National Jurisdiction Arbitration. This decision is made without prejudice to the Union's right to a hearing on the merits under Article 15 in the event that the National Level decision does not involve a jurisdictional claim.

*Id.*

## DISCUSSION

### I. Subject Matter Jurisdiction

Defendant moves for the dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction because it argues that Arbitrator Owens' decision was limited only to the question of procedural arbitrability and did not address the merits of Local 308's claim; therefore, it is incomplete and outside the scope of this Court's review. In response, Plaintiff argues that the award is final because Arbitrator Owens made a decision as to arbitrability. Plaintiff further asserts that this Court has jurisdiction to vacate the arbitration award under 39 U.S.C. § 1208(b), which permits suits against the USPS for breaches of labor contracts. 30 U.S.C. § 1208(b). They maintain that this statute implicitly grants courts the power to review labor arbitration awards in this context. *Id.*; *Am. Postal Workers' Union v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 3 (D.D.C. 2009). However, lacking in Plaintiff's position is case law concerning whether courts may

review incomplete arbitration awards. In that regard, this Court finds that Plaintiff incorrectly relies on 39 U.S.C. 1208(b) and that Arbitrator Owens' decision is an incomplete award, which strips the subject matter jurisdiction of this Court to review the decision.

In order for a district court to have jurisdiction to review an arbitration award, it must be final and complete so as to prevent "disrupt[ing] and delay[ing] the arbitration process." *Pub. Serv. Elec. & Gas Co. v. System Council U-2, Int'l Bhd. of Elec. Workers*, 703 F.2d 68, 70 (3d Cir. 1983) ("We hold that under the present circumstances the panel's determination of liability was not a final award . . . .. As such, the district court lacked jurisdiction to reach the merits of the determination.); *Union Switch & Signal Div. Amer. Standard Inc. v. United Elec., Radio, & Mach. Workers of Amer. Local 610*, 900 F.2d 608, 611 (3d Cir. 1990). This precedent instructs that district courts may not interrupt arbitration hearings in a manner that "could result in piecemeal litigation." *System Council U-2,* 703 F.2d at 70. Thus, for an arbitration award to be complete it must address the merits of the complaint and leave no issues open for further resolution. *Id.*

Here, Arbitrator Owens' decision to stay arbitration until the conclusion of the national dispute is not a final decision. *See* Arbitration Award p. 8. Arbitrator Owens' decision, much like the incomplete arbitration award in *System Council U-*2, "partakes of all the attributes of an interim order." *System Council U-2.*, 703 F.2d at 20. Arbitrator Owens simply postponed any potential arbitration until the national issue is resolved, which would clarify the proper resolution procedure through which the grievance may be disputed – a procedural decision based upon certain provisions of the trilateral agreement between the parties. Additionally, while it was held in *American Postal Workers' Union* that 39 U.S.C. 1208(b) includes an implicit power to review arbitration awards, it expressly notes that this power only exists when there is a final and binding

6

award that does not merely "postpone[] the determination of a remedy." *American Postal Workers' Union*, 646 F. Supp. at 3. Plaintiff's reliance on *American Postal Workers' Union*, is therefore misplaced. Because Arbitrator Owens did not address the merits of Plaintiff's grievance, he did not issue a complete and final award that may be reviewed by this Court.

Nevertheless, Plaintiff asserts that Arbitrator Owens' decision is complete because it addressed the issue of arbitrability. Defendant correctly submits that the Arbitrator's decision merely determined procedural arbitrability and that Plaintiff misconstrues that decision. Indeed, it is well-settled that questions of substantive arbitrability are for the court to decide and questions of procedural arbitrability are reserved for the arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). Questions of substantive arbitrability to be decided by the court are limited to "question[s] regarding whether the parties should be arbitrating at all." *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d. Cir. 2007) (quoting *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006)). Importantly, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc.*, 376 U.S. at 557.

Here, the parties do not dispute that this grievance should be in arbitration; in fact Plaintiff's requested remedy is to return to arbitration. *See* Compl. p. 10. While Arbitrator Owens' decision may state that "[t]he grievance is not arbitrable," that particular statement simply acknowledges that the grievance cannot currently be arbitrated because of the pending national issue. Arbitration Award p. 8-9. In that regard, Defendant correctly states, the decision "addressed only whether the parties had completed the contractual prerequisites to arbitration, not whether they had agreed to arbitrate in the first place." Def.'s Reply Mem. at 3.

7

Indeed, the Q&As clearly state that if there is any dispute as to whether a grievance brought under a party's CBA contains a jurisdictional issue, i.e. disputes over work assignments, "[i]t must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim," and further that any proceedings must be stayed until the resolution of any national issue. RI-399 Training at 15. These rules set forth the procedures that must be followed in order to arbitrate potential jurisdictional issues under the parties' agreements. Because there is a related labor dispute pending at the national level, as disclosed in Lewis' testimony, the prerequisites of arbitration have not been met. Thus, Arbitrator Owens' decision to stay was a procedural determination, rather than a substantive decision on arbitrability. Accordingly, as Arbitrator Owens' decision was not final, Plaintiff's invitation for this Court to intervene must be rejected.

**II. The Arbitrator's Award**

Moreover, even if this Court had subject matter jurisdiction to review the Arbitrator's decision, the Court would be unable to vacate the decision as it "draws its essence from the collective bargaining agreement." *United Steelworkers of Amer. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Nevertheless, Plaintiff urges that this award be vacated on the grounds that Arbitrator Owens misinterpreted the agreements and made incorrect factual conclusions. On the other hand, Defendant argues that Arbitrator Owen's award draws its essence from the parties' agreements because the arbitrator "expressly considered the parties' bilateral CBA, RI-399, the Q&As, the local trilateral agreement and a 2000 Memorandum of Understanding regarding jurisdictional disputes." D's Mem. At 19.

In order for an award to draw its essence from the parties' agreements, it must be based in "interpretation and application of the collective bargaining agreement . . . ." *Enterprise Wheel*

8

*& Car Corp.*, 363 U.S. at 597; *see Exxon Shipping Co. v. Exxon Seamens' Union*, 993 F.2d 357, 360 (3d Cir. 1993) ("[W]e must enforce an arbitration award if it was based on an "arguable" interpretation and/or application of the collective bargaining agreement . . . ."). Courts are required to "uphold an arbitrator's judgment if the decision, on its face, was drawn from the parties' agreement or is remotely based on reasonable contractual interpretation." *Cacace Associates, Inc. v. Southern N.J. Bldg. Laborers Dist. Council*, No. 3:07-cv-5955, 2009 WL 424393, at *3 (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379 (3d Cir. 1995)). Additionally, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement" and are given great deference in assessing factual contentions and witness credibility. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citing *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36 (1987)); *N&FM Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir. 1975). ("[A] court is precluded from overturning an award for errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues."). Therefore, in reviewing an arbitration award in order to determine if it draws its essence from the parties' agreement, the Court may only consider the language of the agreement and "basic principles of contract construction." *Cacace Assocs., Inc.,* 2009 WL 424393, at *3 (citing *News Am. Publications, Inc., Daily Racing Form Div. v. Newark Typographical Union Local 103*, 921 F.2d 40, 41 (3d Cir. 1990)).

Here, Arbitrator Owens rendered a detailed decision that considers the arguments and relevant evidence presented by both parties. *See* Arbitration Award. Relying on Lewis' testimony and the agreements, Arbitrator Owens determined the dispute between Local 308 and the USPS is related to a pending national dispute, which warranted a stay of the arbitration hearing until the

9

resolution of that national dispute. *Id.* at 7-9. This is a factual determination based on the relevant CBA and RI-399 provisions that is wholly within the purview of the Arbitrator. *See N&FM Corp.*, 524 F.2d at 759. Indeed, Arbitrator Owens' decision draws its essence from the parties' agreements and it is supported by the record. Thus, Plaintiff's request to vacate on the basis that Arbitrator Owens misinterpreted the agreements and made incorrect factual determinations do not provide valid grounds on which this Court may vacate the arbitration decision. *See Cacace Assocs., Inc.*, 2009 WL 424393 at *3; *Major League Baseball Players Ass'n*, 532 U.S. at 509. The Court has no basis to disturb Arbitrator Owens' decision.

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**.

**DATED**:    June 24, 2014                                                /s/     Freda L. Wolfson
                                                                          Freda L. Wolfson, U.S.D.J.